Shirin AJUDANI, Rosemary Shookoufandeh, and Lana Dieringer, Appellants,

v.

Jimmy WALKER, Attorney ad litem for Arezo Ajudani, a minor, Appellee.

No. 01–06–00089–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 24, 2007.

Lana R. Dieringer, Dieringer Law Firm, Houston, TX, for Appellant.

Jimmy Walker, Dinkins Kelly Lenox Lamb & Walker, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

## OPINION

EVELYN V. KEYES, Justice.

Appellants, Shirin Ajudani, Rosemary Shookoufandeh, and Lana Dieringer, appeal from the probate court's October 6, 2005 order that charged attorney ad litem fees and expenses against them. In four issues, appellants argue that (1) the probate court erred when it assessed attorney ad litem fees and expenses against them because (a) the court's plenary power had expired, (b) the court did not have the authority to award the fees and expenses against appellants, and (c) the attorney ad litem failed to present evidence sufficient

to support the reasonableness of the award; and (2) the probate court erred when it assessed attorney ad litem fees and expenses against Dieringer, because she was not a party to the case.

We modify the probate court's October 6, 2005 order and affirm it as modified.

## Background

Prior to his December 19, 2001 death, Dr. Shahrokh Ajudani mailed a typewritten document to his attorney, Lana Dieringer, entitled "Last Will and Testament of Shari Ajudani," together with seven handwritten pages. The first handwritten page begins, "Dear Lana, Here is my will which we never had the chance to complete before . . ."; the remaining pages detail how Dr. Ajudani's estate should be distributed after his death.

Dieringer, on behalf of Dr. Ajudani's sisters, Shirin Ajudani and Rosemary Shookoufandeh, originally offered the typewritten document entitled "Last Will and Testament of Shari Ajudani" for probate. On January 3, 2002, however, Dieringer, on behalf of Shirin and Rosemary, amended the request and, instead, offered for probate the seven handwritten pages as Dr. Ajudani's purported holographic will. On January 28, 2002, Dieringer was added as an applicant. On July 19, 2002, the probate court appointed Jimmy Walker as attorney ad litem for Dr. Ajudani's minor daughter, Arezo. On August 9, 2002, Dieringer filed a motion to withdraw herself as an applicant, alleging that her addition as an applicant had been in error. Walker objected to her withdrawal "until all costs of this proceeding have been adjudged and awarded." The probate court did not rule on Dieringer's motion to withdraw.

On October 24, 2002, Walker filed an application for authority to pay appointee fees and expenses with the probate court, requesting that his fees and expenses be paid "by the personal representative from funds of the estate." Included with the application were a statement detailing his fees and expenses covering the period of July 10, 2002 through September 30, 2002 and a fee affidavit. On November 11, 2002, the probate court granted the application and issued an order authorizing the payment of $4,351.00 ($4,262.50 in fees and $88.50 in expenses) "by the personal representative from funds of the estate."

On November 25, 2002, Walker filed a second application for authority to pay appointee fees and expenses, requesting that his fees and expenses be paid "by the personal representative from funds of the estate." Included with the application were a statement detailing his fees and expenses covering the period of October 1, 2002 through October 31, 2002 and a fee affidavit. On December 18, 2002, the probate court granted the application and issued an order authorizing the payment of $1,477.91 ($1,436.25 in fees and $41.66 in expenses) "by the personal representative from funds of the estate."

On February 13, 2003, Walker filed a third application for authority to pay appointee fees and expenses with the probate court requesting that his fees and expenses be paid "by the personal representative from funds of the estate." Included with the application were a statement detailing his fees and expenses covering the period of November 1, 2002 through December 31, 2002 and a fee affidavit. On February 21, 2003, the probate court granted the application and issued an order authorizing the payment of $5,050.52 ($4,286.25 in fees and $764.27 in expenses) "by the personal representative from funds of the estate."

On July 11, 2003, Walker filed a motion for summary judgment arguing that Dr.

Ajudani's letter to Dieringer, which Dieringer had filed for probate, was not a will because "it lack[ed] the necessary testamentary intent to make it a will and was not executed with testamentary intent." The motion for summary judgment also included a request "that all costs associated with the defense of this case be taxed against the Applicants [Dieringer, Shirin, and Rosemary]." In an August 7, 2003 order, the probate court granted Walker's motion for summary judgment and included an order "that all costs of this proceeding are adjudged against the applicants, Lana Dieringer, Shirin Ajudani, Rosemary Shokoofandeh [sic]." Shirin, Rosemary, and Dieringer subsequently filed an appeal of the probate court's order granting summary judgment, which we affirmed. *See Ajudani v. Walker,* 177 S.W.3d 415 (Tex. App.-Houston [1st Dist.] 2005, no pet.).

On August 26, 2003, Walker filed a fourth application for authority to pay appointee fees and expenses with the probate court, requesting that his fees and expenses be paid "by the personal representative from funds of the estate." Included with the application were a statement detailing his fees and expenses covering the period of January 1, 2003 through July 31, 2003 and a fee affidavit. On September 15, 2003, the probate court granted the application and issued an order authorizing the payment of $6,570.91 ($5,886 in fees and $684.91 in expenses) "by the personal representative from funds of the estate."

On October 7, 2003, Walker filed a fifth application for authority to pay appointee fees and expenses requesting that his fees and expenses be paid "by the personal representative from funds of the estate." Included with the application were a statement detailing his fees and expenses covering the period of August 1, 2003 through August 31, 2003 and a fee affidavit. On November 10, 2003, the probate court granted the application and issued an order authorizing the payment of $1,856.46 ($1,787.50 in fees and $68.96 in expenses) "by the personal representative from funds of the estate."

On November 25, 2003, Walker filed a sixth application for authority to pay appointee fees and expenses requesting that his fees and expenses be paid "by the personal representative from funds of the estate." Included with the application were a statement detailing his fees and expenses covering the period of September 1, 2003 through October 31, 2003 and a fee affidavit. On December 16, 2003, the probate court granted the application and issued an order authorizing the payment of $1,861.90 ($1,761.25 in fees and $100.65 in expenses) "by the personal representative from funds of the estate."

On January 27, 2004, Walker filed a seventh application for authority to pay appointee fees and expenses requesting that his fees and expenses be paid "by the personal representative from funds of the estate." Included with the application were a statement detailing his fees and expenses covering the period of November 1, 2004 through December 31, 2004 and a fee affidavit. On February 6, 2004, the probate court granted the application and issued an order authorizing the payment of $4,018.37 ($3,948.75 in fees $69.62 in expenses) "by the personal representative from funds of the estate."

Based on his seven applications for authority to pay appointee fees and expenses, Walker's total fees were $23,368.50 and his total expenses were $1,818.57, for a grand total of $25,187.07.

On July 25, 2005, we notified Walker that our mandate for appellants' 2005 appeal of the probate court's order granting summary judgment had issued. On August 4, 2005, Walker filed a motion to assess costs in the probate court alleging:

The costs of this proceeding are as follows:

| | | |
|---|---|---|
| Deposition costs | - | $ 211.60 |
| Attorney ad Litem fees and expenses | - | 27,396.05 |
| Total | | $27,607.65 |

On October 6, 2005, the probate court granted Walker's motion to assess costs, ordering that "the costs of this proceeding, in the amount of $27,607.65 are assessed, jointly and severally against the Applicants, Shirin Ajudani, Rosemary Shookoufandeh, and Lana Dieringer, and that Arezo Karimi Ajudani shall recover the sum of $27,607.65, jointly and severally from Shirin Ajudani, Rosemary Shookoufandeh, and Lana Dieringer...." Although the probate court had granted seven applications authorizing payment of appointee fees and expenses *from the funds of Dr. Ajudani's estate*, the court's October 6, 2005 order assessed these fees and expenses against Shirin, Rosemary, and Dieringer in their individual capacities.

On October 27, 2005, appellants filed a motion for a new hearing on Walker's motion to assess costs. The probate court did not rule on appellants' motion for a new hearing, and appellants instituted this appeal.

### Analysis

#### *The Trial Court's Plenary Power*

In their first issue on appeal, appellants argue that the trial court erred when it assessed Walker's fees and expenses against them because the trial court's plenary power had expired. Walker responds that the trial court's assessment of his fees and expenses against appellants was a ministerial act over which the trial court maintained its jurisdiction.

■ Under the Texas Probate Code, "[a]ll final orders of any court exercising original probate jurisdiction shall be appealable to the courts of appeals." TEX. PROB.CODE ANN. § 5(g) (Vernon Supp.2006). A probate order is the functional equivalent of a judgment when it finally disposes of a particular issue between parties. *Maxfield v. Terry,* 885 S.W.2d 216, 220 (Tex.App.-Dallas 1994, writ denied). Thus, the probate court's plenary power to vacate, modify, correct, or reform a final order expires 30 days after it is signed. *See* TEX.R. CIV. P. 329b(d). Even if the probate court's plenary power has expired, however, it retains its inherent power to clarify or enforce the order. *See Shackelford v. Barton,* 156 S.W.3d 604, 607 (Tex. App.-Tyler 2004, pet. denied); *Hurley v. Hurley,* 960 S.W.2d 287, 288 (Tex.App.-Houston [1st Dist.] 1997, no pet.).

■ Here, the probate court's October 6, 2005 order assessing costs was an order clarifying a previous order. In its August 7, 2003 order granting Walker's motion for summary judgment, the probate court adjudged costs against Shirin, Rosemary, and Dieringer. Thus, the order determined *who* would pay costs, but not *how much* they would have to pay; the amount of Walker's fees and expenses up to this point had been determined by the court's three previous orders granting Walker's applications for authority to pay appointee fees and expenses.[1] After this Court affirmed the probate court's order granting summary judgment in favor of Walker, Walker moved and the probate court ordered that Shirin, Rosemary, and Dieringer pay $27,607.65 for Walker's fees and expenses. By ordering Shirin, Rosemary, and Dieringer to pay a particular amount, the probate court was clarifying its August

---

1. Subsequent to the probate court's August 7, 2003 order granting Walker's motion for summary judgment, Walker filed four additional applications for authority to pay appointee fees and expenses, all of which the probate court granted.

7, 2003 order that had assessed costs against Shirin, Rosemary, and Dieringer without fixing the amount to be paid and was, therefore, acting within its inherent power. *See Shackelford,* 156 S.W.3d at 607; *Hurley,* 960 S.W.2d at 288.

We overrule appellant's first issue.

### Recovery of Attorney's Fees and Expenses From Appellants

■ In their third issue on appeal, appellants argue that the trial court erred when it charged Walker's attorney's fees and expenses against them without the statutory or contractual authority to do so. Walker responds that under Texas Rule of Civil Procedure 131, he is entitled to recover his costs from appellants, and therefore to recover his attorney's fees, because he was the successful party in this suit.

Under the Texas Probate Code, "[e]ach attorney ad litem appointed ... is entitled to reasonable compensation for services in the amount set by the court and to be taxed as costs in the proceeding." TEX. PROB.CODE ANN. § 34A (Vernon 2003). Such costs are to be charged against the estate.[2] HOUSE COMM. ON JUDICIAL AFFAIRS, BILL ANALYSIS, Tex. H.B. 266, 68th Leg., R.S. (1983); *see also* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005) ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the ... legislative history...."). Thus, by implication, such costs cannot be assessed against an adverse party, even if the attorney ad litem represents the successful party. *See*

TEX.R. CIV. P. 131 ("The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided.").

Here, in its August 7, 2003 order granting summary judgment for Walker, the probate court ordered that "all costs of this proceeding are adjudged against the applicants, Lana Dieringer, Shirin Ajudani, and Rosemary Shokoofandeh [sic]." On August 4, 2005, Walker filed a motion with the probate court to assess costs against appellants totaling $27,607.65–$27,396.05 of which Walker attributed to attorney ad litem fees and expenses and $211.60 of which he attributed to deposition costs.[3] The court granted Walker's motion on October 6, 2005. Because compensation for an attorney ad litem's services must be charged against the estate to which his appointment relates, the probate court erred when it charged these costs against appellants. *See* BILL ANALYSIS, Tex. H.B. 266, 68th Leg., R.S. (1983). The probate court should have charged Walker's attorney's fees and expenses against Dr. Ajudani's estate. *See id.*

We sustain appellants' third issue.

### Reasonableness of Fees

■ In their fourth issue on appeal, appellants argue that the probate court erred in awarding attorney's fees without evidence to support the reasonableness of the fees awarded. In response, Walker points out that each fee application submitted to and approved by the court prior to his motion to assess costs included an affidavit

2. The digest of the bill analysis states, "The bill would permit probate judges to appoint an attorney ad litem ... to represent the interests of an unknown heir, a nonresident, or a person with a legal disability in *any* probate proceeding. The attorney ... would be entitled to court-determined fees, *which would be charged against the estate."* HOUSE COMM. ON JUDICIAL AFFAIRS, BILL ANALYSIS, TEX. H.B. 266, 68th Leg., R.S. (1983) (second emphasis added).

3. In his August 4, 2005 motion to assess costs, Walker requested $27,607.65. However, the probate court had previously ordered a total of only $25,187.07 to be paid from Dr. Ajudani's estate. Walker included no documentation with his motion to assess costs to support an award of an additional $2,420.58.

and an itemized statement detailing time spent and services performed. Because the probate court's orders authorizing payment of appointee fees and expenses were final and appealable and appellants never objected to or appealed these orders, according to Walker, they have waived any objection to the propriety of these orders.

■ The reasonableness of attorney's fees must be supported by competent evidence. *In re R.D.Y.*, 51 S.W.3d 314, 325 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). When no evidence or insufficient evidence supports an award, the court abuses its discretion in making the award. *Woollett v. Matyastik*, 23 S.W.3d 48, 53 (Tex.App.-Austin 2000, pet. denied). Here, the total amount of fees and expenses supported by Walker's applications is $25,187.07. However, Walker requested, and the probate court ordered, the payment of $27,607.65 even though Walker included no documentation with his motion to assess costs to support an additional award of $2,420.58. Because the evidence is insufficient to support an award of $27,607.65, we conclude that the court below abused its discretion in making this award in an amount greater than that supported by the evidence. *See id.*

We sustain appellants' fourth issue.[4]

### Conclusion

We modify the probate court's October 6, 2005 order to award $25,187.07 to Walker from Dr. Ajudani's estate in accordance with this opinion. We affirm the order as modified.[5]

---

4. Because our ruling on appellant's third issue is dispositive of appellants' second issue, we need not reach the second issue. TEX. R.APP. P. 47.1.

5. *See* TEX.R.APP. P. 43.2(b) ("The court of appeals may ... modify the trial court's judgment and affirm it as modified.").